IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ROBERT F. MAYHUE, IV, | ) | Civil Action No.: 2:25-cv-07185-DCN |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | Violation of the FLSA; |
| -versus- | ) | Violation of the SCPWA; |
| | ) | Breach of Contract; |
| GARDEN STATE TILE | ) | Breach of Contract Accompanied by a Fraudulent Act; |
| DISTRIBUTORS, INC., | ) | Quantum Meruit; Promissory Estoppel |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |
| | ) | |

The plaintiff, complaining of the acts of the defendant, alleges as follows:

**PARTIES AND JURISDICTION**

1. That plaintiff is a citizen and resident of the County of Berkeley, State of South Carolina.

2. That, upon information and belief, defendant Garden State Tile Distributors, Inc. ("Garden State" or "defendant") is a foreign corporation maintaining offices and agents and otherwise doing business in the County of Charleston, State of South Carolina.

3. That this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 based upon plaintiff's claims under the Fair Labor Standards Act, 29 U.S.C. § 207.

4. That venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) as all parties reside in this district and jurisdiction, and all acts giving rise to plaintiff's claims occurred in this district and jurisdiction.

5. That based upon the above, jurisdiction and venue are proper in this court.

1

**FACTUAL ALLEGATIONS**

6. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 5 hereinabove as fully as if set forth verbatim.

7. That upon information and belief defendant is a stone and tile distributor with showrooms and warehouses across the east coast of the United States, including locations in Charleston, South Carolina and Savannah, Georgia.

8. That, upon information and belief, defendant is owned by Stephen Fischer and his son Christopher Fischer.

9. That on or about December 13, 2021, defendant, by written correspondence, offered plaintiff a job to work for it at its Charleston, South Carolina distribution facility as an Assistant Warehouse Manager on terms which included, but were not limited to, the following:

   (a) Defendant would pay plaintiff $60,000 a year plus full benefits;

   (b) The plaintiff was to work full-time hours, Monday through Friday, 7:30 a.m. to 4:30 p.m.;

   (c) Plaintiff was to start the new job on or about December 27, 2021; and

   (d) The letter described some of the duties of the job offered to plaintiff.

10. That the defendant's two (2) page, single-spaced offer letter referred to above did *not* state whether or not the position it offered to the plaintiff was exempt or non-exempt under the FLSA for purposes of paying overtime wages.

11. That on or about the following day (December 14, 2021) the plaintiff accepted the defendant's offer of employment and on or about December 27, 2021 plaintiff began working for defendant as its new Assistant Warehouse Manager at defendant's Charleston, South Carolina distribution facility.

2

12. That at the time defendant hired plaintiff, it did not employ a Warehouse Manager (or anyone else for that matter) at its Charleston, South Carolina facility, even though defendant employed Warehouse Managers at its other locations.

13. That as such, as to plaintiff's chain of command, initially (and for a majority of the time plaintiff worked at defendant) he reported directly to Christy Iacometta ("Iacometta"), the defendant's Director of Operations who worked out of New Jersey. Iacometta, in turn, reported to defendant's Vice-President, Chris Fischer, who resides in the Charleston, South Carolina area, and who would on occasion visit defendant's Charleston, South Carolina facility. Chris Fischer reported to his father, Stephen Fischer, the President of the company, who lived and worked out of New Jersey. And, though not in plaintiff's chain of command, plaintiff also had dealings with Robert Fischer, the Head of Employee Wellness, and Daniel Baluski ("Baluski"), the Director of Human Resources.

14. That shortly after commencing his employment with defendant, plaintiff observed that, despite being paid a $60,000 salary and despite having a job title with the word "manager" in it, he in fact was not a supervisor or manager at defendant and had no supervisory or managerial authority over any person under him in the chain of command, including the ability to hire, discipline and fire. Plaintiff likewise shortly realized that all of his duties involved manual labor and that, for the most part, he worked either alone or with one other employee at defendant.

15. That to this end, defendant hired four (4) consecutive drivers while plaintiff was employed with the defendant. The driver position was a position that reported directly to the plaintiff. Yet plaintiff had nothing to do with hiring any of the four (4) drivers; plaintiff did not prepare any job postings for the positions; he did not receive or review the job applications or resumes from the prospective candidates for the job; he did not select which applicants would be

3

interviewed, though he attended three (3) of the interviews, he did not question the prospective applicants or participate in the interviews and, most importantly, plaintiff did not make the hiring decision and he did not negotiate the employees' pay or terms of employment.

16. That to this end, defendant first hired Josh Wilson ("Wilson") as a driver. While plaintiff attended Wilson's interview, plaintiff did not question Wilson or participate in it. When the interview was over, plaintiff casually remarked to Chris Fischer that he had some reservations about hiring Wilson, but Chris Fischer ignored plaintiff's comments and hired Wilson anyway.

17. That about a year later, when Wilson was having issues getting his DOT license renewed due to health issues, plaintiff, who had knowledge of Wilson's circumstances, requested that the defendant assign Wilson to work with him in the warehouse. Defendant ignored plaintiff's request and, instead, fired Wilson – again, without seeking input from the plaintiff regarding the decision to terminate Wilson and without plaintiff playing any role whatsoever into the termination of Wilson.

18. That in or around March of 2023, defendant was attempting to hire the second driver, which turned out to be Sam Estep ("Estep"). When Estep showed up at the premises for his interview for the job, plaintiff was present but Chris Fischer was not there. Yet defendant did not permit plaintiff to proceed with the interview that day. Instead, plaintiff had to tell Estep the interview needed to be rescheduled to a time when Chris Fischer was available to interview him.

19. That after working as a driver for approximately three (3) months, Estep had some driving incidents. As a result, Chris Fischer, Iacometta and Baluski made the decision to take Estep out of his position as a driver and to assign him to work in the warehouse. Plaintiff, who was allegedly Estep's direct supervisor, played no role in the decision and had no input into it.

Sometime later, Iacometta made the decision to reduce Estep's full-time hours down to 25 hours a week. Again, plaintiff played no role in this decision and was not even asked for his input into it.

20. That as of in or around May of 2023, defendant placed an advertisement seeking a third driver at its Charleston, South Carolina facility. Plaintiff had nothing to do with the decision to post for the driver's job. In fact, defendant hired the third driver, Sam Taylor ("Taylor"), entirely behind plaintiff's back, without telling plaintiff about it. Instead, defendant had its Warehouse Manager from its Savannah, Georgia facility, Josh Rhinehart ("Rhinehart") review the job applications for the position and to then drive to Charleston to conduct interviews for the position. Ultimately, Rhinehart made the decision to hire Taylor. Thus, plaintiff had nothing to do with the hiring of the third driver, Taylor. Plaintiff did not even know about it. He did not attend Mr. Taylor's job interview or otherwise play a role in the hiring.

21. That in or around August of 2024, defendant hired a Warehouse Manager for its Charleston, South Carolina facility, Tory Hightower ("Hightower"), who became plaintiff's direct supervisor.

22. That in or around October of 2024, defendant hired a fourth driver, but this time, though plaintiff was allowed to attend the interviews for the driver, it was Hightower who determined who would be interviewed for the position; it was Hightower who conducted the said interviews; it was Hightower who made the hiring decision when it came to the fourth driver; and it was Hightower who negotiated the fourth driver's pay.

23. That as the above indicates, defendant did not provide plaintiff with the authority to hire, discipline, fire, set the terms of employment for or set the schedules for those who allegedly reported directly to him at defendant.

5

24. That at the same time, plaintiff's duties at defendant the entire time he worked there involved manual labor-type duties such as removing pallets off of the delivery trucks, breaking down the pallets, indexing the inventory, and placing it in the appropriate part of the warehouse. Plaintiff also drove and operated a fork lift and occasionally or from time to time would meet with walk-in customers.

25. That the defendant had plaintiff keep track of all hours he worked while employed at defendant. As it turns out, even though plaintiff's offer letter stated that plaintiff would only be working forty (40) hours a week, in reality plaintiff worked fifty (50) to sixty (60) hours a week – a fact reflected in plaintiff's timecards and paystubs.

26. That yet, during the entire time plaintiff worked for defendant, defendant failed and refused to pay plaintiff any monies for any of the hours he worked over forty (40) hours a week, meaning defendant failed to pay plaintiff straight time or overtime pay for hours he worked that exceeded forty (40) hours each week.

27. That at the same time, defendant employed an employee at its distribution facility in Savannah, Georgia who held the same job title as plaintiff (Assistant Warehouse Manager) and who performed the exact same job duties as plaintiff, yet defendant deemed this employee, Zack Hogashi ("Hogashi") a non-exempt employee and paid that employee overtime pay for every hour he worked over forty (40) hours each week.

28. That ultimately, in or around late October/early November of 2024 plaintiff resigned from the defendant with proper notice and on good terms.

29. That plaintiff performed his job duties at defendant in an above-satisfactory fashion and otherwise maintained an excellent employment record there.

6

30. That despite the above, defendant refused and still refuses to pay plaintiff any monies for overtime hours he worked at defendant.

## FOR A FIRST CAUSE OF ACTION: VIOLATION OF THE FLSA FAILURE TO PAY OVERTIME HOURS WORKED 29 U.S.C. § 207

31. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 30 hereinabove as fully as if set forth verbatim.

32. That at all relevant times, plaintiff was an employee of defendant within the meaning of The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.

33. That defendant is and was at all relevant times an employer engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), as defendant entered into contracts, shipped goods, and accepted payments over and across state lines.

34. That based upon the allegations set forth above, defendant employed plaintiff in a non-exempt hourly position.

35. That plaintiff regularly worked in excess of forty (40) hours per work week during his employment with defendant.

36. That despite the above, defendant failed to pay plaintiff straight-time pay or overtime pay for any and all hours plaintiff worked over forty (40) hours per week, all as required by the FLSA, 29 U.S.C. § 207.

37. That in other words, instead of paying plaintiff overtime compensation for the overtime hours he worked, defendant failed to pay plaintiff for those hours altogether and thereby violated the FLSA.

7

38. That defendant knowingly and willfully failed to pay plaintiff for overtime hours plaintiff worked as required by the FLSA and, thus, plaintiff is entitled to recover liquidated damages and attorney's fees and costs from the defendant.

39. That as a result of defendant's unlawful conduct, plaintiff has suffered damages, including loss of wages and liquidated damages, and is entitled to recover all unpaid wages and overtime compensation owed, an equal amount in liquidated damages, reasonable attorney's fees and costs, and prejudgment interest pursuant to 29 U.S.C. § 216(b).

## FOR A SECOND CAUSE OF ACTION: VIOLATION OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT S.C. Code § 41-10-10, et seq.

40. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 39 hereinabove as fully as if set forth verbatim.

41. That defendant is an "employer" as defined by S.C. Code Ann. § 41-10-10(1) of the South Carolina Payment of Wages Act ("SCPWA").

42. That the monies owed to plaintiff by defendant as set forth above all constitute wages as defined by S.C. Code Ann. § 41-10-10(2) of the SCPWA.

43. That defendant has failed to pay plaintiff the wages described above at the time said wages were due as defined by the SCPWA, i.e., within forty-eight (48) hours of being separated from defendant's payroll, by plaintiff's next pay period, or within thirty (30) days after plaintiff left the company.

44. That as such, defendant has violated the South Carolina Payment of Wages Act.

45. That defendant's violations of the said Act were willful, knowing and intentional and persist, despite repeated notice and, therefore, defendant is liable to plaintiff for all wages due and treble damages.

46. That moreover, plaintiff seeks and is entitled to recover reasonable attorney's fees and costs and prejudgment interest from the defendant.

<b><u>FOR A THIRD CAUSE OF ACTION</u></b>:<br><b><u>BREACH OF CONTRACT</u></b>

47. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 46 hereinabove as fully as if set forth verbatim.

48. That plaintiff and defendant entered into a contract of employment whereby plaintiff agreed to perform certain services for defendant, and defendant agreed to pay plaintiff a full salary plus time and a half for overtime hours worked.

49. That plaintiff performed the obligations and duties imposed upon him by the parties' employment agreement. At the same time, plaintiff worked well over forty (40) hours a week every week of his employment at defendant.

50. That, despite the above, defendant failed to pay plaintiff any wages defendant owed to plaintiff under the parties' agreement for overtime hours plaintiff worked and, as such, defendant has breached the parties' contract.

51. That as a direct and proximate result of defendant's breaches as set forth above, plaintiff has suffered damages in the form of the unpaid wages as set forth above, and prejudgment interest.

## FOR A FOURTH CAUSE OF ACTION:
## BREACH OF CONTRACT ACCOMPANIED
## BY A FRAUDULENT ACT

52. That Plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 51 hereinabove as fully as if set forth verbatim.

53. That as alleged above, the parties entered into a contract whereby defendant agreed to pay plaintiff certain wages in the form of a salary and overtime pay.

54. That defendant breached the said agreement by failing to pay plaintiff the full amount of wages due. Specifically, defendant refused to pay plaintiff any wages for any and all overtime plaintiff worked.

55. That defendant had a fraudulent intent which related to the breach. Namely, defendant sought to avoid paying plaintiff the full amount of wages due.

56. That defendant engaged in fraudulent acts which accompanied the breach.

57. That as a direct and proximate result of defendant's conduct as set forth above, plaintiff has suffered damages in the form of lost or unpaid salary, wages and overtime pay, emotional distress, pain and suffering, loss of enjoyment of life, loss to professional standing, character and reputation, humiliation, embarrassment, anxiety, depression, inconvenience, physical and personal injuries, and prejudgment interest.

58. That defendant's conduct as set forth above was undertaken willfully, wantonly, intentionally, and in reckless disregard for plaintiff's rights, and therefore plaintiff is entitled to recover punitive damages from the defendant.

## FOR A FIFTH CAUSE OF ACTION:
## QUANTUM MERUIT

59. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 58 hereinabove as fully as if set forth verbatim.

60. That plaintiff provided valuable services and labor to the defendant in the form of working overtime hours and plaintiff sought to charge defendant for same.

61. That defendant accepted, used and enjoyed the services of plaintiff, under such circumstances as reasonably notified defendant that plaintiff expected to be paid for said services.

62. That defendant has failed to pay plaintiff for said services and, thus, plaintiff is entitled to the fair value of the overtime hours he worked, plus prejudgment interest.

## FOR A SIXTH CAUSE OF ACTION:
## PROMISSORY ESTOPPEL

63. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 62 hereinabove as fully as if set forth verbatim.

64. That defendant made clear and unambiguous promises to plaintiff, namely that it would pay plaintiff his full wages, plus overtime wages, and most recently that it would pay plaintiff the amount of wages plaintiff was underpaid during the time plaintiff worked for defendant.

65. That plaintiff reasonably relied upon defendant's promises and had the right to so rely upon them.

66. That defendant breached its promises to plaintiff by not paying plaintiff wages owed to him.

67. That plaintiff sustained injuries in reliance on the promises, namely in the form of unpaid wages, unpaid overtime wages, prejudgment interest, and the costs of this action.

WHEREFORE, plaintiff prays for the following relief against defendant:

11

(a) As to plaintiff's First Cause of Action for violation of the FLSA, for such amount of actual and special damages as the trier of fact may find, including all unpaid regular and overtime wages due, prejudgment interest, liquidated damages, the costs and disbursements of this action, including reasonable attorney's fees, and for such other and further relief as the court deems just and proper;

(b) As to plaintiff's Second Cause of Action for violation of the SCPWA, for such amount of actual and special damages as the trier of fact may find, including all unpaid regular and overtime wages due, prejudgment interest, treble damages, the costs and disbursements of this action, including reasonable attorney's fees, and for such other and further relief as the court deems just and proper;

(c) As to plaintiff's Third, Fifth and Sixth Causes of Action for breach of contract, quantum meruit, and promissory estoppel, for such amount of actual and special damages as the trier of fact may find, including all unpaid regular and overtime wages due, prejudgment interest, the costs and disbursements of this action, and for such other and further relief as the court deems just and proper; and

(d) As to plaintiff's Fourth Cause of Action for breach of contact accompanied by a fraudulent act, for such amount of actual and special damages as the trier of fact may find, (including damages for emotional distress, pain and suffering, loss of enjoyment of life, inconvenience, loss to professional standing, character and reputation, embarrassment, humiliation, anxiety, depression, and physical and personal injuries), all unpaid regular and overtime wages due, prejudgment interest, the costs and disbursements of this action, and for such other and further relief as the court deems just and proper.

                                                                 HITCHCOCK & POTTS

                                                                 By: <u>s/A. Christopher Potts</u>
                                                                 Federal ID No.: 5517
                                                                 222 West Coleman Blvd., Suite 124 #11
                                                                 Mt. Pleasant, SC 29464
                                                                Telephone: (843) 577-5000
                                                                Email: cpotts@hitchcock-potts.com
                                                               ***Attorneys for the Plaintiff***

Charleston, South Carolina
July 13, 2025